**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-417 (CKK)** |
| | : | |
| **HAMZA DOOST,** | : | |
| **also known as "Scyllia," and "¢,"** | : | |
| | : | |
| **KUNAL MEHTA, also known as "Papa,"** | : | |
| **"The Accountant," "Shrek," and "Neil,"** | : | |
| **Defendants.** | : | |

**EMERGENCY MOTION FOR *DE NOVO* REVIEW OF MAGISTRATE'S RELEASE ORDER AND REQUEST TO STAY DEFENDANTS' RELEASE PENDING *DE NOVO* REVIEW**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court for *de novo* review of the release order for defendants Hamza Doost ("Doost") and Kunal Mehta ("Mehta"), issued by a United States Magistrate Judge for the Central District of California, Douglas McCormick, on May 13, 2025, and further requests the Court stay the defendants' release until the conclusion of the *de novo* review process.

The Government moves for pre-trial detention under Title 18, United States Code, Sections 3142(f)(2)(A) (risk of flight) for Defendants Doost and Mehta and 3142(f) (safety of the community) for Defendant Mehta.

Both defendants are charged with violations of Title 18, United States Code, Section 1962(d), commonly referred to as RICO Conspiracy. They, along with ten of their friends, were members and associates of a sophisticated Social Engineering Enterprise ("SE Enterprise") operating throughout the United States and abroad, namely the United Arab Emirates, New Zealand, and elsewhere.

As alleged in the Indictment, this SE Enterprise began in or around October 2023 and continued through at least March 2025. The purposes of the SE Enterprise included, but were not limited to stealing virtual currency from victims throughout the United States through fraudulent pretenses; disguising, concealing, and obfuscating the source and ownership of the stolen funds through the use of virtual currency laundering techniques; and converting laundered virtual currency into fiat currency and wire transfers for use at nightclubs, for the purchase of exotic cars, jewelry, luxury handbags, clothing, private jet rentals, along with other items, property, goods, and services, and rental mansions in Los Angeles, the Hamptons, Miami, and elsewhere.

Members of the SE Enterprise executed social engineering attacks against numerous victims, ranging in profits from a few hundred thousand in stolen virtual currency, up to events where the members stole over $240,000,000 worth of virtual currency in a single evening. The enterprise did more than simply call victims and trick them into providing access to their virtual currency holdings, they also targeted victims for physical home invasions. In or around July 2024, Coconspirator Marlon Ferro, in coordination with Coconspirator Malone Lam and others, flew to New Mexico to break into the home of a wheelchair bound victim in search of his hardware virtual currency wallet while others monitored the victim's location after hacking his iCloud account.

Members of the enterprise, including Coconspirators Malone Lam and Conor Flansburg bragged about their exploits on messaging applications, referring to victims by full name and calling them "stupid," and "dumb f—ks."

While Doost and Mehta's coconspirators were executing social engineering attacks on unwitting victims, stealing hundreds of millions of dollars in cryptocurrency, Doost and Mehta were responsible for laundering the stolen cryptocurrency into fiat cash and wire transfers so that members of the group, largely 18-22 year olds, could live lavish lifestyles filled with millions in

fiat cash, private jet travel, Lamborghinis, Mercedez G Wagons, Ferraris, rental mansions in Los Angeles, Miami, and the Hamptons, and nights out at exclusive nightclubs where the group spent upwards of $500,000 per visit and tossed Hermes Birkin bags valued in the tens of thousands of dollars into crowds to draw women's attention.

As alleged in the Superseding Indictment, members and associates of the SE Enterprise placed their homes and automobiles in the names of straw owners, signers, or shell companies to disguise and conceal their ownership and conceal their identity from law enforcement. Mehta was at the center of the automobile scheme for the SE Enterprise, agreeing to accept stolen virtual currency, laundering it through a network of Chinese nationals for a 10% fee, and then bringing it back into the US banking system to be used in wire transfers to Exotic Car Company-1. Ironically, Mehta listed the owner of Exotic Car Company-1 as one of his bail resources to justify his release. This individual himself appears to be significantly involved with the SE Enterprise, traveling on a private jet from Los Angeles to New York in the summer of 2024 for a weekend party in the Hamptons with Doost, Mehta, and Coconspirator Joel Cortes all funded through the SE Enterprise's stolen virtual currency laundered through Mehta's LLCs.



*Mehta (top left), Co-Defendant Joel Cortes (top right), Doost (bottom left), Owner of Exotic Car Company-1 (bottom right)*

To arrange this 2024 trip from Los Angeles to the Hamptons, Doost and Mehta used Mehta's shell companies to launder stolen cryptocurrency into wire transfers. Doost and Mehta then arranged for the below rental house and fleet of exotic car rentals in the Hamptons for several coconspirators, again all funded through stolen virtual currency.





Following a massive $240,000,000 theft committed by Lam and others on August 18, 2024, the SE Enterprise embarked on a prolific spending spree, using Mehta and Doost as their primary money launderers. Doost arranged for Lam and SE Enterprise members to travel in multiple private jets from Los Angeles to Miami in early September 2024. Doost traveled with the group and is photographed below on one of the private jets with Co-defendant Tucker Desmond.



*Desmond (right) Doost (left)*

Doost, in his own words, marketed himself as someone who could arrange private jet travel for individuals who either didn't have, or didn't want, to show their identity documents.

As alleged in the Indictment, in or around May 2024, Doost informed Coconspirator Lam that he could obtain various private jet rentals for Lam and his associates and Doost could arrange air travel for Lam and others where they would not need to provide any identification documents to travel on private jets.

Doost appears to have an association with a website that advertises private jet access, www.flystopgo.com, as his personal number listed in the contacts.




In addition to travel, Doost facilitated money laundering activity for Coconspirator Malone Lam in Miami, ensuring that Lam had enough fiat cash to fund the SE Enterprise lifestyle at Miami nightclubs. This, again, is captured in countless messages between Coconspirators Lam, Doost, and others.



*Lam in Miami Night Club with Fiat Cash in September 2024*

The investigation has seized multiple incriminating messages between Doost, Mehta, and several members of the SE Enterprise, explicitly discussing their money laundering activity. For example, in a string of September 6, 2024 messages, Coconspirator-1 and Doost discuss how another cybercriminal discovered that they pulled off the $240,000,000 virtual currency theft in August. The conversation includes the following:

| | |
|---|---|
| Coconspirator-1: | He knows where we got the target from. Which no one knows |
| Doost: | How the fuck |
| Coconspirator-1: | IDK [I don't know] |
| Doost: | Is he friends with like [Coconspirator] Chen or anyone that did it with you guys |
| Coconspirator-1: | Not sure. He knows we did all this, has all our info. |
| | * * * |
| Doost: | I genuinely think Malone [Lam] has a huge chance of getting caught |

| | |
|---|---|
| | compared to you, keep your profile the way that you do |
| Coconspirator-1: | Yeah he's gonna simmer down hopefully |

* * *

| | |
|---|---|
| Doost: | Bro delete your Tele[gram] chats and setup your new phone |
| Doost: | Bro, are we going to be good? |
| Coconspirator-1: | Yes we good |
| Doost: | Bro like for sure? |
| Coconspirator-1: | Yes |

In another series of messages between Doost and Coconspirator-2 on September 12, 2024, Doost discussed a $400,000 crypto-to-cash transaction that went wrong for the group.

| | |
|---|---|
| Doost: | Coconspirator-2 yk [you know] I've been depressed for the past 5 days |
| Coconspirator-2: | Why have you been depressed |
| Doost: | I got beamed |
| Coconspirator-2: | By who |
| Doost: | Message deleted |
| Coconspirator-2: | The same cash people that you be sending to hesby |
| Doost: | Not those, they were out. I sent these people to a parking lot. Used them 4-5 times. |
| Coconspirator-2: | That's terrible bro. So you sent them 400k for free? |
| Doost: | You're making me sound dumb but cash people every cash person always requires it first and he's fronted money for me before so it was just a show for me – but a few racks is fine bro. Never been burned in my life and highest I did with these people are like 500k on tx. |

Coconspirator-2 also discussed the details of Doost's failed crypto-to-cash transaction with Coconspirator Cortes and explained that the crypto-to-cash transfer was being performed for another Coconspirator, Malone Lam.

| | |
|---|---|
| Coconspirator-2: | Do yk [you know] who has cash being delivered to hesby |
| Cortes: | Hamza [Doost]. He told me he was delivering it there. I changed the address. Cuz I told him there was security. N his dumb ass is asleep. N I can't get ahold of him. |
| Coconspirator-2: | Oh word damn |
| Cortes: | Bro Malone's [Lam] gonna be mad asf [as fuck] he can't get cash. |
| Coconspirator-2: | Why can't he get cash |
| Cortes: | That's his cash that Hamza [Doost] ordered |

* * *

Cortes: Idk [I don't know] how tf [the fuck] the cash is gonna get delivered Malone [Lam] sent me 400k to get the money n Hamza [Doost] had me send it to a guy to deliver it. Now this mf [mother fucker] Hamza isn't answering his phone.

Doost is also caught discussing his ability to procure iPhone for Coconspriator-2 and place them in the names of third parties and set them up with a system where Coconspirator-2 would be notified if they were ever the subject of a law enforcement subpoena.

As for Defendant Mehta, his money laundering activities are also captured through numerous messages on Signal and Telegram. For example, on September 15, 2024, Mehta agreed to launder $500,000 in stolen virtual currency for Coconspirator-2 and explained in detail how he would use his companies to conceal and disguise the funds.

On September 15, 2024, Mehta sent Coconspirator-2 a message stating "[c]ash exchange we can do here brother." Coconspirator-2 asked about the prices for exchanges so he could send fiat cash to his mother and buy her a new car. Mehta responded, "[s]ame like always my g. 10%. Since day 1… So $550k when you ready… If you want I can even wire half to her account and half cash. I'm sure it's going to be easier for her to spend if it's in her account than $500k cash." Coconspirator-2 replied, "I see bro but with wire wouldn't it be crazy if **federals** looked into that for her? … 250k in the account out of no where." Mehta responded by stating "[w]hat does she do for work and then I can explain. There's no way we will put $250k right away you know." Coconspirator-2 explained what his mother did for a living. Mehta responded, "Ok. Don't worry I'll figure it out but I won't recommend putting cash in the account like that. Wires are much better and I can put 'family support' as that's not taxable and will come from my company so it shows she's my aunt and I'm [h]elping her. Anyone can question her and it'll be no issues." Mehta finally stated, "I'll get the $500k over to her. . . [w]e could do easy like $30k plus… And then I can even create some kinda work for her and show that I paid her for that and at the end of

the year once she files her taxes I can help her get refund as well. If you want some cash to give with the car then I think we should do like 250k and rest I can do wires slowly."

Mehta used his various LLC bank accounts to facilitate all of this money laundering. Mehta's JP Morgan bank records show his extensive ties with Chinese nationals who receive stolen cryptocurrency on his behalf, launder it, and then transfer it back into Mehta's company accounts with fictitious descriptions. For example, A review of Mehta's company records showed transactions on July 2, and 3, 2024 where Mehta's Code Ninja LLC company received a combined $200,000 in an incoming wire transfer from a Q. Zhao for "Family Support." Mehta received another $110,000 deposit into CodeNinja LLC on July 5, 2024 for "Family Support," which is the same notation he described above for Coconspirator-2.

In additional conversations with Coconspirator-2, Mehta discussed how he arranges exotic car purchases for the SE Enterprise, specifically stating on September 8, 2024 "[a]ppreciate you bro. Our goal is to cover our tracks in a way that if anything comes back ever we are covered and have no stress."

Additional Coconspirators are intercepted discussing Mehta's cash business and his ability to register automobiles to conceal the identities of the SE Enterprise members.

On September 14, 2024, Coconspirator-2 asked Coconspirator Flansburg about his automobiles, and whether they were registered under "Papa" referring to Mehta. Flansburg responded "All my cars are chilling, I got all mine under him. I don't got a clue how he [Lam] has his set up."

On May 13, 2025, multiple exotic automobiles were seized from Coconspirator Flannsburg's home, all registered to Mehta or his shell companies. Below is a photo from Flansburg's residence showing a 2020 Lamborghini Aventador LP 770 SVJ and a 2024 Mercedes-Benz G-Class AMG G 63, registered to Mehta's LLCs, Motivation Rentals LLC and Digital Core Systems LLC.



*Coconspirator Flansburg's Residence*

Additional automobiles have been seized from various Coconspirators, all held in Mehta's LLCs. Below is a photo of a red 2021Ferrari F8 Tributo, purchased with stolen cryptocurrency, through Mehta, that was seized from Coconspirator Joel Cortes. Cortes is one of Mehta's assistants in the money laundering operation, shipping cash across the country in stuffed animals at Mehta's direction. This Ferrari was also registered to one of Mehta's LLCs, Code

Ninja LLC.



*Coconspirator Cortes (rear) with CodeNinja LLC Ferrari*

During Coconspirator Lam's September 18, 2024 arrest in Miami, Florida, agents recovered bills of sale for two additional automobiles Lam purchased with stolen virtual currency through Mehta, but held in the name of one of Mehta's LLCs, this time, Digital Core Systems LLC.

**Bill of Sale**

[redacted]

| Buyer | | Co-Buyer | |
|---|---|---|---|
| Name: | DIGITAL CORE SYSTEMS LLC | Name: | |
| Address: | 6365 MIRAMONTE | Address: | |
| City, State, Zip: | IRVINE CA 92618 | City, State, Zip: | |
| Phone: | | Phone: | |
| Email: | KDKM@THEKDKM.COM | Email: | |
| Driver Lic. #: | | Driver Lic. #: | |

| Stock No | Year | Make | Model | Style / Color | Miles | VIN |
|---|---|---|---|---|---|---|
| U222911 | 2024 | ROLLS-ROYCE | PHANTOM | SEDAN ARCTIC WHITE | 3362 | SCATT6C09RU222911 |

| A.P.R | Amount Financed | Finance Charge | Total of Payments |
|---|---|---|---|
| 0.00 | $ 627,084.47 | $ N/A | $ 627,084.47 |

**Payment Schedule**

1 PAYMENTS OF 627,084.47 ONE-PAY BEGINNING 08/24/2024

**Itemization of Total Down**

| | |
|---|---|
| Cash Down: | $ N/A |
| Total Deferred: | $ N/A |
| Trade-Amt: | $ N/A |
| (Less)Pay-Off: | $ N/A |
| MFR. Rebate: | $ N/A |
| **Total Down:** | $ N/A |

**Trade Vehicle**

| Year | Make | Model | Style / Color |
|---|---|---|---|
| | | | |

| Miles | License # | VIN |
|---|---|---|
| | | |

**Itemization of Amount Financed**

| | |
|---|---|
| CASH PRICE | $ 560,000.00 |
| SALES TAX | $ 44,822.78 |
| ACCESSORIES | $ 18,223.44 |
| DOC PREP | $ 85.00 |
| SMOG FEE | $ 50.00 |
| LICENSE | $ 3,895.00 |
| REGISTRATION | $ N/A |
| SMOG CERTIFICATE FEE | $ 8.25 |
| ELECTRONIC FILING FEE | $ N/A |
| CALIFORNIA TIRE FEE | $ N/A |
| OTHER FEES | $ N/A |
| SERVICE CONTRACT | $ N/A |
| GAP CONTRACT | $ N/A |
| INSURANCE | $ N/A |
| SUB-TOTAL | $ 627,084.47 |
| LESS: CASH DOWN | $ N/A |
| LESS: DEFERRED | $ N/A |

**Bill of Sale**

[redacted]

41542

| Buyer | | Co-Buyer | |
|---|---|---|---|
| Name: | DIGITAL CORE SYSTEMS LLC | Name: | |
| Address: | 6365 MIRAMONTE | Address: | |
| City, State, Zip: | IRVINE CA 92618 | City, State, Zip: | |
| Phone: | | Phone: | |
| Email: | KDKM@THEKDKM.COM | Email: | |
| Driver Lic. #: | | Driver Lic. #: | |

| Stock No | Year | Make | Model | Style / Color | Miles | VIN |
|---|---|---|---|---|---|---|
| PX468026 | 2023 | MERCEDES-BENZ | G-CLASS | SUV MANUFAKTUR NIGHT BLACK MAGNO MATTE | 2240 | W1NYC7HJ7PX468026 |

| A.P.R | Amount Financed | Finance Charge | Total of Payments |
|---|---|---|---|
| 0.00 | $ 415,715.54 | $ N/A | $ 415,715.54 |

**Payment Schedule**

1 PAYMENTS OF 415,715.54 ONE-PAY BEGINNING 08/23/2024

**Itemization of Total Down**

| | |
|---|---|
| Cash Down: | $ N/A |
| Total Deferred: | $ N/A |
| Trade-Amt: | $ N/A |
| (Less)Pay-Off: | $ N/A |
| MFR. Rebate: | $ N/A |
| **Total Down:** | $ N/A |

**Trade Vehicle**

| Year | Make | Model | Style / Color |
|---|---|---|---|
| | | | |

**Itemization of Amount Financed**

| | |
|---|---|
| CASH PRICE | $ 369,995.00 |
| SALES TAX | $ 29,621.35 |
| ACCESSORIES | $ 12,080.94 |
| DOC PREP | $ 85.00 |
| SMOG FEE | $ 50.00 |
| LICENSE | $ N/A |
| REGISTRATION | $ 3,875.00 |
| SMOG CERTIFICATE FEE | $ 8.25 |
| ELECTRONIC FILING FEE | $ N/A |
| CALIFORNIA TIRE FEE | $ N/A |
| OTHER FEES | $ N/A |
| SERVICE CONTRACT | $ N/A |

What is more, as alleged in the Superseding Indictment (Overt Act r) from in or around

early 2024 and continuing through at least September 2024, Mehta also assisted Coconspirators Flansburg, Ferro, and Coconspirator-2 with obtaining firearms to protect themselves against rival cybercrime groups. Of note, two firearms were recovered from Ferro's residence on May 13, 2025 and one firearm was recovered from Coconspirator-2's rental home in late 2024.

**May 13, 2025 Search Warrants**

The FBI executed a search warrant at Mehta's home in Irvine, California on May 13, 2025. Agents recovered three firearms, one shotgun, and nearly $300,000 in fiat cash located in a box in a closet.

Agents were unable to execute a search warrant for Doost's residence because he had no fixed residence for the prior 30-day period.

**International Travel**

Both defendants have extensive international travel and contacts. As an initial matter, at least three, and perhaps five of the defendants charged in the Superseding Indictment are located overseas in either Dubai or New Zealand. On the date his arrest, Mehta himself had a plane ticket purchased to travel to Dubai, leaving this week. Currently, Coconspirators Yarally and Demirtas, both US citizens, are located in Dubai, a country that historically does not extradite to the United States.

Mehta's international travel includes *at least* the following border crossing, into or out of the United States.

| | |
|---|---|
| October 2023 | Canada |
| November 2022 | United Kingdom |
| February 2022 | Qatar |
| November 2021 | Qatar |
| March 2021 | Qatar |
| December 2020 | Netherlands |

| | |
|---|---|
| December 2020 | France |
| September 2020 | France |
| March 2020 | Panama |
| January 2020 | Mexico |
| November 2019 | China |
| September 2019 | Qatar |
| August 2019 | Canada |
| June 2019 | United Arab Emirates |
| September 2018 | United Arab Emirates |
| June 2018 | Mexico |
| February 2019 | Switzerland/ France |
| December 2017 | United Arab Emirates |
| August 2017 | Canada |
| November 2016 | Canada |
| March 2016 | United Arab Emirates |
| June 2015 | United Arab Emirates (x2) |

Doost also has a history of international travel, just having returned in March 2025 from an overseas trip with Coconspirators Yarally and Demirtas in Thailand and Dubai.

| | |
|---|---|
| March 2025 | United Arab Emirates |
| December 2024 | Italy |
| March 2023 | Turkey |
| January 2023 | Canada |
| August 2022 | Canada |
| May 2022 | Turkey |
| August 2018 | Turkey |
| January 2017 | Canada |
| April 2016 | Turkey |
| March 2025 | Saudi Arabia |

Because of the emergency nature of this filing, the full proposed order setting conditions of release has not yet been entered by Magistrate Judge McCormick or available as of the time this motion is filed. Magistrate Judge McCormick appears to have ordered a $20,000 appearance bond for Doost and $25,000 for Mehta but stayed his release order until 4 PM (PST), on Wednesday May 14, 2025. Accordingly, in the event the Court does not immediately order the defendants' detention based on this motion, the government requests the Court enter an order

staying the Magistrate's release order pending the entirety of the *de novo* review process.

## I. ARGUMENT

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release

This Court may detain a defendant upon motion of the government in a case that, as here, involves "a serious risk that such person will flee" or involves "a serious risk that such person will obstruct or attempt to obstruct justice." 18 U.S.C. §§ 3142(f)(2)(A) and 3142(f)(2)(B).

While the act governing pre-trial detention requires that detention be supported by "clear and convincing evidence" when the justification is the safety of the community, it is silent as to the level of proof required to establish risk of flight. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). This circuit, however, has ruled that such a finding need only be supported by a "preponderance of the evidence." *Id. citing United States v. Vortis*, 785 F.2d 327, 329 (D.C.Cir.1986).

Courts commonly agree that detention based on risk of flight "is a valid regulatory device" because it "serves the principles of [our constitutional] system by guaranteeing that the defendant will stand trial and, if convicted, face punishment." *United States v. Melendez-Carrion*, 790 F.2d 984, 1002 (2d Cir.1986), *citing Bell v. Wolfish*, 441 U.S. 520, 534, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979).

To justify detention on the basis of dangerousness to the community, the government must prove by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *United States v. Munchel*,

---

> decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

991 F.3d 1273, 1280 (D.C. Cir. 2021).

The relevant factors in both evaluations remains the same under Title 18, United States Code, Section 3142(g) – namely, (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's past conduct and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In consideration of these factors, along with the applicable rebuttable presumptions, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community (Mehta) or the defendant's appearance at future proceedings (Doost and Mehta).

**A. Nature and Circumstances of the Offenses Charged**

The nature of the charged offenses are serious. Defendants are charged in a 40-page Superseding Indictment, alleging that they were central figures in a long running racketeering enterprise that profited through sophisticated fraud schemes, database hacks, home break-ins, unlicensed money service businesses, and extensive money laundering operations.

Doost and Mehta knowingly accepted this stolen cryptocurrency and used a network of Chinese nationals to launder the funds on the blockchain, only to repatriate it back into the US financial system through LLC wire transfers of bulk cash exchanges. For this service, they charged a 10% fee of the total transaction, a truly exorbitated fee compared to legitimate virtual currency exchanges that have anti-money laundering protocols.

Mehta himself used several shell companies to help the enterprise members hide their ownership in millions of dollars' worth of automobiles. According to California Secretary of State filings, Digital Core Systems was created on September 11, 2024 by Mehta. Motivational Rentals

LLC was established in July 2024 with a different registrant, and Code Ninja LLC was established on March 10, 2024 by Mehta. These dates and times align with his involvement with the racketeering enterprise and help explain why cars owned by enterprise members are titled in the names of Mehta's companies.

**B. Weight of the Evidence Against the Defendants**

The weight of the evidence is overwhelming. The defendants lay out their involvement in the conspiracy, with other enterprise members, in their own words and through their own text messages. They are photographed traveling with the enterprise members for weekend parties in the Hamptons, funded on stolen cryptocurrency, which they helped launder through their financial accounts and LLCs.

This is all in addition to multiple witnesses who detail their money laundering activities. While Doost had no fixed residence at the time of arrest, Mehta was home in Irvine. He possessed nearly $300,000 in fiat cash and multiple firearms including the below shotgun.



**C. Defendants' History and Characteristics**

Defendant Doost's history and characteristics favor detention. He has extensive

international travel and no true fixed address. He recently returned from a trip abroad with multiple coconspirators, some of whom have remained abroad in a non-extraditable country. Doost was living in a hotel near John Wayne Airport in the time before his arrest. According to Doost, he was living with a friend in Irvine but the friend advised that Doost was living in a hotel. As noted in the CDCA pre-trial report "The defendant's residence and employment has not been verified, he has a passport, foreign travel history, and minimal time in this district." Those factors remain in place for the District of Columbia. Doost still has no verifiable address, he has recent international travel, he has access to private jets and has marketed himself as someone who can arrange jet travel without identification documents. These factors all favor detention.

Defendant Mehta's history and characteristics also favor detention. Three pistols and a shotgun were seized from his home, along with $300,000 in fiat cash. Mehta represented that he is a business owner in his PSR, but his businesses appear to be shell companies receiving laundered virtual currency from Chinese nationals. Mehta listed his associate S.D. as a possible bail resource, but again, this is another associate of the SE Enterprise, who helped arrange millions of dollars' worth of automobile purchases through laundered cryptocurrency. *See Overt Act u.*

**D. Danger to the Community**

Mehta has no prior convictions but was in possession of three pistols and one shotgun during the search warrant. As the Superseding Indictment alleges, in Overt Act r, from in or around early 2024 and, Mehta assisted Coconspirators Flansburg, Ferro, and others with obtaining firearms.

## CONCLUSION

WHEREFORE, the United States respectfully requests the Court issue an emergency order staying the Magistrate's release order pending the de novo review process and further requests the

Court ultimately order both defendants detained pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Kevin Rosenberg*
Kevin Rosenberg
Assistant United States Attorney
Ohio Bar 0081448
United States Attorney's Office
601 D. Street NW
Washington, D.C. 20530